Ross Anthony SMITH and Michael Bodak, Plaintiffs–Appellants,

v.

Mark GARRETTO, individually, Defendant–Appellee.

No. 97–7929.

United States Court of Appeals, Second Circuit.

Argued March 5, 1998.

Decided June 3, 1998.

Jonathan Lovelett, White Plains, NY (Jane Bilus Gold, Lovelett & Gould, White Plains, NY, on brief), for plaintiffs-appellants.

Marguerite R. Wiess, Asst. County Atty., White Plains, NY (Gregory F. Meehan, Acting Westchester County Atty., Stacey Dolgin–Kmetz, Dep. County Atty., White Plains, NY, on brief), for defendant-appellee.

Before: OAKES, NEWMAN, and CABRANES, Circuit Judges.

JON .O. NEWMAN, Circuit Judge:

This appeal primarily concerns the availability of absolute or qualified immunity for a prosecutor's action in setting up a bribery sting allegedly in retaliation for the target's exercise of free speech rights. Ross Anthony Smith and Michael Bodak appeal from the July 21, 1997, judgment of the District Court for the Southern District of New York (Charles L. Brieant, District Judge), dismissing their claims against defendant-appellee Mark Garretto on the basis of a prosecutor's absolute immunity. Though we agree with appellants that the prosecutor does not enjoy absolute immunity with respect to all of the allegations of the complaint, we conclude that he is entitled to qualified immunity with respect to those that do not encounter absolute immunity, and we therefore affirm.

## Background

The allegations of appellants' complaint, which we accept for purposes of this appeal, describe a broad conspiracy among officials of the Yonkers Municipal Housing Authority (the "Author ity"), as well as other state and local government officials to violate various

Constitutional rights, in violation of 42 U.S.C. §§ 1983, 1985 (1994). Beginning in 1995, Smith and Bodak—both of whom were then (and apparently remain) employees of the Authority—began to publicly expose corruption within the Authority. In particular, they criticized the leadership of James Holadek, then Chairman of the Authority; claimed that he had hired a number of his friends, despite their falsification of credentials on employment applications; and charged that certain Authority policies were racist. After Smith and Bodak had gained considerable attention among residents and employees of the Authority and in the local media, Holadek called Bodak to a meeting that Bodak secretly recorded. At this meeting, Holadek told Bodak that he had considered having Smith killed in order to silence him. Holadek did not mention Smith by name, but referred to him with a racial epithet. Bodak subsequently made this tape public.

The allegations critical to this appeal concern a plot by Holadek, his cohorts in the leadership of the Authority, and Assistant District Attorney Garretto, to retaliate against Smith and Bodak for their efforts to expose corruption and racism in the Authority. Garretto, the only defendant who is a party to this appeal, agreed with others "to set Bodak up on false criminal charges, frame him in connection with a purported bribe, and criminally prosecute him." Complaint ¶ 26. In furtherance of this scheme, Garretto "arranged to have a corrupt individual … meet Bodak with a view towards giving him a purported 'bribe', in order to arrest Bodak for bribe receiving." Id. ¶ 27. Because of an alleged relationship with the F.B.I., Bodak decided to meet with this individual and to accept the purported bribe that he understood was being offered in Holadek's sting to catch Bodak accepting a bribe. Bodak claims that his plan was to run his own sting to catch Holadek offering a bribe: he would accept the money, turn it over to the F.B.I., and thereby initiate a prosecution of Holadek. Bodak's plan was aborted, however, when, immediately upon accepting the money, he was arrested by investigators from the District Attorney's office.

Garretto notified the media and Bodak's supervisor at the Authority of Bodak's arrest. Thereafter, Bodak was suspended from his job at the Authority, but as of the filing of the complaint, he remained an employee. Garretto presented the case to a Westchester County grand jury and obtained an indictment against Bodak. The record does not disclose the disposition of the charge against Bodak.

After Bodak and Smith filed their complaint, Garretto moved to dismiss the claims against him pursuant to Fed.R.Civ.P. 12(b)(6). Garretto argued that the portions of the complaint alleging that he maliciously instituted criminal proceedings against Bodak were subject to absolute prosecutorial immunity and that the remainder of the claims against him—relating to the investigation, arrest, and disclosure of the arrest—should be dismissed on the basis of qualified immunity. The District Court held in an oral ruling that Garretto was entitled to absolute immunity for all his alleged conduct, and accordingly dismissed all claims against him pursuant to Rule 12(b)(6) and then directed entry of a separate judgment pursuant to Fed.R.Civ.P. 54(b).

Discussion

Since the complaint contains no allegations that Garretto took any action against Smith, dismissal of the complaint against Garretto was proper as to Smith. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). Bodak contends that the District Court erred in dismissing his claims against Garretto on the basis of absolute immunity. He appears to acknowledge that Garretto is entitled to absolute immunity for the institution of criminal proceedings—including presenting the bribery case against Bodak to a grand jury. However, he contends that Garretto is eligible at most only for qualified immunity for his actions in organizing a bribery sting against Bodak and disclosing Bodak's arrest to the press and to Bodak's boss, and he further argues that the objective reasonableness of these actions of Garretto's requires factual determination at trial.

I. Garretto's Action in Planning the Sting

▬▬ *(a) Absolute immunity.* A prosecutor enjoys absolute immunity for acts taken "in initiating a prosecution and in presenting the State's case," whether at a trial, *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), a preliminary hearing, *see Burns v. Reed,* 500 U.S. 478, 487–92, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), or a bail hearing, *see Pinaud v. County of Suffolk,* 52 F.3d 1139, 1149–50 (2d Cir. 1995). Such immunity also extends to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). However, "when a prosecutor 'functions as an administrator' ... [or] performs the investigative functions normally performed by a detective or police officer," he is eligible only for qualified immunity. *See id.* (quoting *Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. 984); *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994).

Although all investigative activity could be considered in some sense to be "preparing for the initiation of judicial proceedings," *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606, the Supreme Court has sought to draw a line between those preparatory steps that a prosecutor takes to be an effective advocate of a case already assembled and those investigative steps taken to gather evidence. The Court has identified "evaluating evidence and interviewing witnesses" as falling on the absolute immunity side of the line, leaving "searching for the clues and corroboration" that might lead to a recommendation for an arrest on the qualified immunity side. *See id.* The Court has also identified "plan[ning] and execut[ing] a raid" as another example of action enjoying only qualified immunity. *See id.* at 274, 113 S.Ct. 2606.

▬▬ In *Buckley,* the prosecutor's action of obtaining allegedly fabricated expert testimony sharply divided the Supreme Court in the application of the preparation/investigation standard. The majority ruled that the prosecutor was entitled at most only to qualified immunity, *id.* at 272–76, 113 S.Ct. 2606, while a four-justice dissent would have accorded

him absolute immunity, *id.* at 282, 113 S.Ct. 2606 (Kennedy, J., with whom Rehnquist, C.J., and White and Souter, JJ., join, dissenting in part). In the pending case, Garretto's action in orchestrating a sting designed to catch Bodak accepting a bribe is decidedly on the investigation side of the line. In no sense was Garretto preparing for the presentation of an existing case; he was doing police work in the hope that his target would succumb to temptation and thereby furnish evidence on which a prosecution could be based. Such conduct is not shielded by absolute immunity.

▬▬ *(b) Qualified immunity.* Qualified immunity protects a governmental official from suit for any actions that did not violate a clearly established constitutional right and those actions as to which the official had an objectively reasonable good faith belief that the action taken was lawful. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Van Emrik v. Chemung County Dep't of Social Services,* 911 F.2d 863, 866 (2d Cir.1990). The first inquiry to be made concerning qualified immunity is whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

▬▬ Bodak's allegation in the pending case—that he was entrapped in retaliation for his exercise of free speech rights—lies at the intersection of two principles. On the one hand, it has been held that an investigative officer's participation in an entrapment does not violate the target's constitutional rights, even though entrapment might be established as a defense to the criminal charge. *See DiBlasio v. City of New York,* 102 F.3d 654, 656–57 (2d Cir.1996); *Jones v. Bombeck,* 375 F.2d 737, 739 (3d Cir.1967); *Johnston v. National Broadcasting Co.,* 356 F.Supp. 904, 907–08 (E.D.N.Y.1973). On the other hand, governmental action taken in retaliation for the exercise of free speech rights normally violates the First Amendment, *see Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274,

283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and this principle has been applied to the retaliatory initiation of lawsuits, *see Greenwich Citizens Committee v. Counties of Warren and Washington Industrial Development Agency,* 77 F.3d 26, 31 & n. 5 (2d Cir.1996).

The Supreme Court has pointed out that determining whether a right has been sufficiently established such that a lawsuit for its violation is not insulated by qualified immunity often depends on the level of abstraction at which the right is defined. *See Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Though we must be careful not to define the right in terms of the precise circumstances of a case, an approach so narrow that the defined right would rarely if ever be said to have been previously established, *see LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998), we think the right at issue here must be defined as a right to be free of a retaliatory entrapment, rather than the more general right to be free of any retaliatory action. The law with respect to retaliatory initiation of litigation has developed with distinct requirements, not directly analogous to the context of other retaliatory actions, such as employment discharges. With retaliatory lawsuits, at least in the civil context, a showing that the retaliatory suit is frivolous seems to be required. *See Greenwich Citizens Committee,* 77 F.3d at 31 & n. 5; *Harrison v. Springdale Water & Sewer Commission,* 780 F.2d 1422, 1428 (8th Cir.1986).

No case has previously been decided in which an entrapment was ruled to be a retaliatory violation of First Amendment rights. It is therefore not clear whether the First Amendment claimant must show that the criminal case against him was frivolous, or merely lacking in probable cause, or whether he can prevail, as Bodak appears to contend, simply by alleging that although he committed a crime without any apparent inducement, he acted with a benign motive and the prosecutor's motive was retaliatory. However the law might develop with respect to the retaliatory initiation of a plan to see if a target is willing, for whatever reason, to accept the invitation to commit a crime, it was not clearly established at the time of Bodak's

acceptance of the offered bribe that Garretto's alleged action violated any constitutionally protected right. For that reason, Bodak's allegations encounter an insuperable defense of qualified immunity.

II. Garretto's Action in Announcing Bodak's Arrest

■ (a) *Absolute immunity.* *Buckley* made clear that a prosecutor's statements to the press are not shielded by absolute immunity. *Buckley,* 509 U.S. at 276–78, 113 S.Ct. 2606; *see Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984).

■ (b) *Qualified immunity.* Whether qualified immunity might be available to Garretto depends initially on whether his action in making a public announcement of Bodak's arrest can be shown to deny Bodak a constitutionally protected right. *See Pinaud,* 52 F.3d at 1148 n. 4. The injury Bodak endeavors to assert, presumably defamation, does not support a claimed violation of constitutional right where the stigmatizing information is true. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 446 (2d Cir.1980). Bodak's complaint acknowledges that Garretto's announcement disclosed a fact that was true: Bodak had been arrested for accepting a bribe. Qualified immunity defeats this claim as well.

### Conclusion

For the foregoing reasons, the judgment of the District Court is affirmed.