**John P. ROONEY, Plaintiff,**

v.

**Roy WITTICH, District Director, U.S. Department of Agriculture, Rural Economic and Community Development Administration, Newburgh, New York; Paul Higgins, Multi–Family Housing Coordinator, U.S. Department of Agriculture, Rural Economic and Community Development Administration, Newburgh, New York; John Doe, Mary Roe and the United States of America, Defendants.**

**No. 96 Civ. 8242 (AGS).**

United States District Court, S.D. New York.

July 13, 1998.

Paul Goodman, Elias, Goodman, Shanks & Zizmor, LLP, New York City, for Plaintiff.

Kathleen M. Riedy, Asst. U.S. Atty., U.S. Dept. of Justice, New York City, for Defendant.

## OPINION AND ORDER

SCHWARTZ, District Judge.

Plaintiff John Rooney was wrongly convicted of a serious crime. But unlike Dr. Richard Kimball in "The Fugitive," or Jean Valjean in "Les Miserables," he did not attempt to disguise his identity and hide, but opted instead for the less dramatic path of appealing his conviction to the Second Circuit. Having succeeded in having his conviction overturned, he has now instituted a civil suit against the United States and the individual government officials whom he believes to be responsible for his persecution. The defendants have moved to dismiss the complaint or, in the alternative, for summary judgment.

For the reasons stated, defendants' motion is granted.

## BACKGROUND

### A. The Dawnwood Apartments Loan Agreements

In 1981, Rooney, a real estate developer, formed a New York State limited partnership known as "Dawnwood Properties 78" ("Dawnwood") of which he was the sole general partner and 95% owner. During the events at issue, defendants Roy Wittich and Paul Higgins were employed by the Rural Development branch of the United States Department of Agriculture ("Rural Development"), then known as the Farmers Home Administration ("FmHA"), which administers the Rural Rental Housing Program under Section 515(b) of the Housing Act of 1949, 42 U.S.C. § 1485(b). The Housing Act permits Rural Development to extend loans to private parties to construct rental housing for low-income individuals residing in rural areas. Higgins, as District Director, and Wittich, as the multi-family coordinator in the Newburgh, New York office of Rural Development, were responsible for ensuring that loan recipients under their jurisdiction complied with applicable federal regulations. (Declaration of Roy Wittich dated August 20, 1997 ("Wittich Decl.") ¶ 4, Ex. A; Declaration of Paul Higgins dated August 20, 1997 ("Higgins Decl.") ¶ 3.)

After several years of negotiations, in December 1983, Rooney executed a $750,000 loan agreement with Rural Development for the construction and operation of a senior citizens residence in Greenport, New York, to be known as the Dawnwood Senior Citizens Housing Project ("the Dawnwood Apartments") (Wittich Decl.Ex. C.) Due to cost overruns on the project, Dawnwood executed a second, superseding Section 515 loan agreement with Rural Development on April 25, 1988. Pursuant to the 1988 loan agreement, Dawnwood borrowed a superseding total amount of $1,042,000 (Wittich Decl.Ex. F.) In connection with the first loan, on November 6, 1985, Dawnwood executed with Rural Development a promissory note for $718,000 with interest at 9% per annum secured by a mortgage against the Dawnwood Apart-

ments. (Wittich Decl.Ex. D, E.) In connection with the 1988 superseding loan, on November 4, 1988, Dawnwood executed with Rural Development a promissory note in the amount of $230,187 with interest at 9.5% per annum, secured by a second mortgage against the Dawnwood Apartments. (Wittich Decl.Ex. G, H.) The Dawnwood Apartments were completed in November 1990. (Wittich Decl. ¶ 18.)

### B. Rooney's Criminal Prosecution

The gravamen of Rooney's complaint is that the defendants conspired to subject him to unwarranted criminal prosecution. The details of Rooney's criminal prosecution are recited in the Second Circuit's opinion vacating his conviction, published as *United States v. Rooney*, 37 F.3d 847 (2d Cir.1994), and this discussion draws heavily on that opinion.

The events leading to Rooney's criminal prosecution began in September 1985, when Dawnwood contracted with DeBrino Caulking Associates, Inc. ("DeBrino"), a general contractor, to build the Dawnwood Apartments. DeBrino began to build the apartments in January 1986. By February 1990, Dawnwood had incurred substantial cost overruns. As a general partner of Dawnwood, Rooney was personally obligated to pay DeBrino for such additional costs, as well as to repay all funds borrowed from Rural Development. 37 F.3d at 849. At this point,

> Rooney had a choice. He could remain personally liable to DeBrino Caulking for these additional costs or he could apply for more loans from [Rural Development] to immediately pay off DeBrino Caulking, but thereby increase his own indebtedness to the agency.

*Id.* at 849–50. According to the Second Circuit, Rooney attempted to turn this precarious situation to his advantage by asking DeBrino's President, Lewis Houghtaling, to install a pond at the development at no additional charge to Dawnwood in return for Rooney's promise to borrow additional funds from Rural Development. *Id.* at 850. Houghtaling was uncomfortable with this

proposal and contacted the defendants,[1] who convinced him to tape record his conversations with Rooney. *Id.* During the recorded conversations, Rooney reiterated his proposal to Houghtaling. *Id.* On the basis of these conversations, Rooney was indicted in the Northern District of New York on January 4, 1991 on one count of corruptly soliciting a thing of value in connection with a federally funded housing project, in violation of 18 U.S.C. § 666(a)(1)(B), and two counts of making a false statement and concealing a material fact in submissions to the Government, in violation of 18 U.S.C. §§ 1001. On April 6, 1991, Rooney was convicted on all counts.

On October 4, 1994, the Second Circuit reversed Rooney's conviction under 18 U.S.C. § 666(a)(1)(B) and vacated the judgment of conviction under 18 U.S.C. § 1001. With regard to the corrupt solicitation count, the Second Circuit stated "we are convinced that Rooney's conduct in this case cannot be considered 'corrupt' because he violated no official or public duty owed to the government or the public at large." *Id.* 37 F.3d at 854. The Second Circuit also reversed Rooney's conviction on the two false statement counts on the grounds that his conviction on these counts could have been the result of prejudicial spillover from his wrongful conviction on the corrupt solicitation count. *Id.* 37 F.3d at 857.

Rooney alleges that his criminal prosecution was the result of a deliberate plan by the defendants to spoil his relationship with DeBrino and enlist DeBrino's aid in their scheme to subject Rooney to criminal prosecution. Specifically, he alleges that the defendants in aid of this plan "falsely encouraged" the construction of a water pond at the Dawnwood Apartments (Am.Compl.¶ 45), inflated Dawnwood's indebtedness to DeBrino (*Id.* at ¶¶ 41(g)(k), 55(p)), encouraged DeBrino to overstate the amount owed by Dawnwood (*Id.* at ¶¶ 47, 48), offered DeBrino financial incentives to cooperate in the criminal investigation of Dawnwood (*Id.* at ¶¶ 44, 50, 51) and encouraged DeBrino officials to

surreptitiously record their conversations with Rooney (*Id.* at ¶ 46).

## C. *Alleged Biased Administration of the Loan Agreements.*

Rooney also alleges that the defendants administered the Dawnwood loan agreements in an incompetent and biased manner, resulting in substantial delays and cost overruns. Specifically, he alleges that:

(1) Wittich and Higgins altered the loan agreements to make him liable for cost overruns and abused their power to disburse loan proceeds and threatened to foreclose the Government's mortgages in order to coerce him into executing revised loan agreements making him liable for cost overruns (Am. Compl.¶¶ 29, 34, 41(i)(t), 55(g)(n), 60(i)(r));

(2) Wittich and Higgins abused their power to disburse loan proceeds in order to force Rooney to obtain an unnecessary water permit from the Town of Hudson, New York, at considerable expense to himself and Dawnwood (Am.Compl.¶¶ 41(a)(b)(c)(g), 55(a)(b)(d), 60(a)(b)(c)(e));

(3) Wittich and Higgins revised Dawnwood's loan agreement in August 1988 to limit the amount of rent that could be charged to tenants at the Dawnwood Apartments (Am. Compl.¶¶ 41(e), 55(e), 60(f));

(4) Wittich and Higgins wrongfully subordinated the Government's 1985 mortgage on the Dawnwood Apartments Mortgage to a mechanics' lien filed by DeBrino (Am. Compl.¶¶ 41(u), 55(o), 60(u));

(5) Wittich and Higgins concealed from Rooney crucial information relating to electrical wiring and other work requirements in the construction of the Dawnwood apartments (Am.Compl.¶¶ 41(f), 41(*l* ), 60(g), 60(*l* ));

(6) Wittich and Higgins wrongly diverted $ 84,000 retained by Rural Development in trust for Dawnwood as security for DeBrino's satisfactory performance towards the payment of Dawnwood's loan from Rural Development (Am.Compl.¶¶ 41(n), 55(i), 60(m));

---

1. The Second Circuit's opinion states only that Houghtaling contacted "an official at the FmHA" who convinced him to tape record the conversations with Rooney. 37 F.3d 847 at 850. The Amended Complaint alleges that Wittich and Higgins were the Rural Development officials who persuaded Houghtaling to tape record these conversations. (Am.Compl.¶ 46.)

(7) Wittich and Higgins withheld approximately $36,000 in repair grants for Dawnwood tenants (Am.Compl.¶¶ 41(p), 55(j), 60(n));

(8) Wittich and Higgins failed to pay Dawnwood monthly rent subsidy payments, and instead wrongly paid them to Dawnwood's general contractor (Am.Compl.¶¶ 41(s), 55(m), 60(q)) and;

(9) Wittich and Higgins wrongly disclosed records pertaining to plaintiff to non-governmental third parties with the intention of causing harm to plaintiff. (Am.Compl.¶¶ 72–75).

As a result of these actions, Rooney contends that "[s]ubstantial completion of the project took over four years rather than the ten months initially projected...." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.Mem.") at 6.)

### D. *Wittich's Public Statements About Rooney*

Finally, Rooney alleges that he was the subject of certain allegedly defamatory statements made by defendant Wittich. In February 1995, Wittich appeared before a community group in Columbia County, New York, to speak about housing opportunities for senior citizens. (Wittich Decl. ¶ 19.) At this meeting, he stated that the Government was not satisfied with Rooney's performance as general partner of Dawnwood and explained the reasons for the Government's dissatisfaction. (*Id.* at ¶ 20.) He also stated that Rooney had been convicted of various charges in connection with the Dawnwood project but noted that the conviction had been overturned on appeal. (*Id.* at ¶ 20.)

These comments were reprinted in a local newspaper on February 7, 1995. (*Id.* at Ex. I.)

### DISCUSSION

On the basis of the factual allegations detailed above, Rooney has instituted claims against the individual defendants[2] pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) for improper seizure of his property in violation of the Fourth Amendment (first cause of action), violation of his rights to procedural and substantive due process under the Fifth Amendment (second cause of action), violation of his right to freedom of speech under the First Amendment by retaliating against him for criticizing Rural Development's administration of the loan program (third cause of action), and violation of his rights under the Privacy Act, 5 U.S.C. § 552a(g)(4) by wrongfully disclosing records pertaining to him to non-governmental third parties (fourth cause of action). Rooney has also instituted various claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680, for negligent infliction of emotional distress, intentional and wanton infliction of emotional distress, false arrest, false imprisonment, defamation and malicious prosecution (fifth cause of action). Rooney also reasserts all of his constitutional claims against all defendants pursuant to 42 U.S.C. § 1983 on the grounds that the unconstitutional actions were carried out together with officials of New York State and/or officials of the Town of Greenport, New York under color of state law.[3] (Am. Compl. ¶ 85.)

---

**2.** Although plaintiff has named "all defendants," including the United States, as defendants in the *Bivens* claims, it is well established that "[a] *Bivens* action may not be maintained against the United States." *Lundstrum v. Lyng,* 954 F.2d 1142, 1146 (6th Cir.1991).

**3.** In addition to the instant case, Dawnwood has initiated two actions against the United States in the Federal Court of Claims. In the first of these, filed on May 10, 1991 ("the 1991 action"), Dawnwood sought compensation for alleged delays and disruption in the project due to the Government's alleged failure to make timely disbursements in response to Dawnwood's claims

for project funds. Dawnwood also sought compensation for the Government's alleged wrongful subordination of the 1985 Mortgage in connection with an action initiated by DeBrino in January 1991 seeking to foreclose a mechanics' lien it had recorded against the Dawnwood premises (Declaration of Kathleen M. Riedy dated August 21, 1997 ("Riedy Decl.") Ex. H, I.) The 1991 action was dismissed by the Court of Claims pursuant to a settlement agreement dated June 16, 1993. (Riedy Decl.Ex. D, F.)

On August 22, 1995, Dawnwood initiated a second action ("the 1995 action") in the Court of Claims alleging, *inter alia,* that the Government

The defendants have moved to dismiss the amended complaint or, in the alternative, for summary judgment.

## A. Applicable Standards

On a motion to dismiss, the allegations in the complaint are liberally construed and considered in the light most favorable to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90, (1974). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, which can be effected by pointing to the lack of evidence supporting an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91·L.Ed.2d 265 (1986). To avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 582, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, summary judgment may be granted if "the evidence is merely colorable, ... or is not significantly probative." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Likewise, speculative and conclusory allegations are insufficient to defeat a motion for summary judgment. *Allen v. Coughlin,* 64 F.3d 77, 80 (2d Cir.1995).

## B. Bivens Claims

It is difficult to ascertain the precise basis of Rooney's *Bivens* claims. In his opposition

to defendants' motion, Rooney explains that all of his *Bivens* claims arise from "the plot to entrap and try [him] for an act which did not constitute a crime" and alleges that this plot "was initiated due to personal grievances between the *Bivens* defendants and plaintiff," and in retaliation for the exercise of his First Amendment right to criticize the defendants' administration of the Rural Development loan program. (Pl.Mem. at 15, 17.) In the Amended Complaint, Rooney also presents *Bivens* claims which appear to be based on the defendants' alleged wrongful withholding of loan disbursements. These are identified in the Amended Complaint as claims for (i) the alleged violation of his rights under the Fourth Amendment by improper seizure of his property, (ii) the alleged violation of his Fifth Amendment right to procedural due process, and (iii) the alleged violation of his Fifth Amendment right to substantive due process. However, in his opposition to defendants' motion, he apparently disavows these claims, stating that the notion that his *Bivens* claims "aris[e] out of commercial disputes over contractual rights in connection with the administration of FmHA loans" is "wholly inaccurate." (Pl. Mem. at 15.) Nevertheless, in order to provide Rooney with every possible opportunity at recovery, the Court will proceed as if Rooney has presented *Bivens* claims alleging retaliatory entrapment in violation of the First, Fourth and Fifth Amendments and *Bivens* claims alleging wrongful withholding of loan disbursements in violation of his rights under the Fourth and Fifth Amendments.

All of these claims are dismissed on the grounds of qualified immunity and, in the alternative, for failure to state a claim upon which relief can be granted.

### (i) Qualified Immunity

■■■ "Qualified immunity protects a governmental official from suit for any actions

had wrongly diverted monies retained in trust for plaintiff as security for DeBrino's satisfactory performance under the Dawnwood–DeBrino construction contract towards the payment of Dawnwood's own construction loan from the Government. (Riedy Decl.Ex. F.) The Dawnwood estate is currently being managed by a Chapter 11 Trustee, appointed pursuant to a voluntary petition for Chapter 11 reorganization

filed by Dawnwood on November 23, 1994. (Riedy Decl.Ex. J.) On August .13, 1997, the Chapter 11 Trustee filed notice of his intent to abandon any claims that Dawnwood may have against the Government on the grounds that "the causes of action are not meritorious and ... are of no value to the estate." (Riedy Decl.Ex. K.) Accordingly, the 1995 action has not been prosecuted.

that did not violate a clearly established constitutional right and those actions as to which the official had an objectively reasonable good faith belief that the action taken was lawful." *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998) (citations omitted.) "The first inquiry to be made concerning qualified immunity is whether the plaintiff has 'allege[d] the violation of a clearly established constitutional right.'" *Id.* (quoting *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). With regard to Rooney's retaliatory entrapment claims, the Second Circuit has recently held that "while the law might develop with respect to the retaliatory initiation of a plan to see if a target is willing, for whatever reason, to accept the invitation to commit a crime," the right to be free from retaliatory entrapment is not yet a clearly established constitutional right, and therefore, claims based on such allegations encounter an insuperable defense of qualified immunity. *Smith,* 147 F.3d at 95. Accordingly, plaintiff's *Bivens* claims based on retaliatory entrapment are dismissed as a matter of law.[4]

■ Plaintiffs' *Bivens* claims based on the defendants' alleged wrongful withholding of loan disbursements are also subject to dismissal on the grounds of qualified immunity. "[W]hether a right has been sufficiently established such that a lawsuit for its violation is not insulated by qualified immunity often depends on the level of abstraction at which the right is defined." · *Smith,* 147 F.3d at 95. In defining the right that has allegedly been violated, a court "must be careful not to define the right in terms of the precise circumstances of a case, an approach so narrow that the defined right would rarely if ever be said to have been previously established ..." *Id.* (citing *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998)). In this case, the right at issue appears to be the right to disbursement of loan proceeds pursuant to a federal loan program. The Court is unaware of any authority for the proposition that the withholding of loan proceeds constitutes an un-

constitutional seizure in violation of the Fourth Amendment. Moreover, for the reasons set forth below in connection with the discussion of plaintiff's failure to state a claim, there is no clearly established Fifth Amendment right to the timely and impartial distribution of federal loans. Accordingly, these claims are also dismissed on qualified immunity grounds. *See Smith,* 147 F.3d at 95.

### (ii) Failure to State a Claim

In the alternative, plaintiff's Fourth Amendment *Bivens* claims for unlawful seizure of his person and property and Fifth Amendment claims alleging violation of his rights to substantive due process and procedural due process are dismissed for failure to state a claim upon which relief can be granted.

■ The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." An individual is seized within the meaning of the Fourth Amendment "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Neighbour v. Covert,* 68 F.3d 1508, 1511 (2d Cir.1995) (citing *United States v. Lee,* 916 F.2d 814, 819 (2d Cir.1990) (internal quotations omitted)). In this case, there is no allegation that the defendants either placed Rooney in a situation in which a reasonable person would have believed that he was not free to leave, or conspired to do so. Accordingly, plaintiff has no *Bivens* claim for seizure of his person. Plaintiff has also failed to articulate any legal basis for his claim that the defendants' actions constituted a "seizure" of his property in violation of the Fourth Amendment.

■ Plaintiff's Fifth Amendment procedural due process allegations also fails to state a claim. "In order to sustain an action

---

4. While *Smith* only addressed explicitly claims of retaliatory entrapment allegedly in violation of the First Amendment, its rationale clearly applies to all *Bivens* claims based on allegations of retaliatory entrapment. Accordingly, to the extent that plaintiff has presented claims of retaliatory entrapment based on the Fourth and Fifth Amendments, they too are dismissed on qualified immunity grounds.

for deprivation of property without due process of law, a plaintiff must 'first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.'" *Local 342, Long Island Pub. Serv. Employees v. Town Board of Town of Huntington,* 31 F.3d 1191, 1194 (quoting *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir.1990)). "In order for a person to have a property interest in a benefit such as a right to payment under a contract, 'he must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.* 31 F.3d at 1194 (quoting *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir.1988)) (internal citations omitted). An allegation of improper administration of an FmHA loan program does not, by itself, establish the requisite property right. *See, e.g., DeJournett v. Block,* 799 F.2d 430, 432 (8th Cir.1986) ("[W]hile the various statutory and regulatory provisions ... to apply for FmHA loans ... establish a regulatory procedure for processing and reviewing loan applications ... these provisions create no property interest on which [a] constitutional tort claim may properly be based."); *Lundstrum v. Lyng,* 954 F.2d 1142, 1147 (6th Cir.1991) (farmer who borrows money from the FmHA has no due process right to loan servicing and emergency loans); *Ashbrook v. Block,* 917 F.2d 918, 925 (6th Cir.1990) (allegation that FmHA officials failed to provide management assistance and credit counseling to lender pursuant to federal regulations did not provide basis for Fifth Amendment claim).

█ Finally, Rooney's Fifth Amendment substantive due process allegations also fail to state a claim. With regard to substantive due process, "it is axiomatic that the doctrine of judicial self-restraint requires courts 'to exercise the utmost care' when presented with a request to define or develop rights in this area." *Local 342,* 31 F.3d at 1196 (quoting *Reno v. Flores,* 507 U.S. 292, 302–03, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (internal quotations omitted)). Moreover, "[i]t is well settled that, where 'the alleged right ... cannot be considered so rooted in the traditions and conscience of our people as to be

ranked as fundamental' notions of substantive due process will not apply." *Id.* (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Plaintiff has failed to identify the violation of any right "so rooted in the traditions and conscience of our people as to be ranked as fundamental." In light of the Supreme Court's admonition to exercise the "utmost" restraint in this area, the Court finds that Rooney has failed to allege a substantive due process violation.

### C. *Privacy Act Claims*

█ Plaintiff's claim under the Privacy Act also fails to state a claim. The Privacy Act, 5 U.S.C. § 552(a), prohibits disclosure of certain records by governmental agencies. The Act permits recovery of monetary damages by a plaintiff who has been the subject of disclosure of information by the government and who can prove that

(1) the information is covered by the Act as a "record" contained in a "system of records"; (2) the agency "disclose[d] the information"; (3) the disclosure had an "adverse effect" on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was willful or intentional.

*Quinn v. Stone,* 978 F.2d 126, 131 (3rd Cir. 1992). The burden of proof with regard to each of these elements rests upon the plaintiff. *Edison v. Dep't. of Army,* 672 F.2d 840, 842 (11th Cir.1982). The Privacy Act does not provide compensation for "mere administrative error." *Dowd v. Internal Revenue Serv.,* 776 F.2d 1083, 1084 (2d Cir.1985.) In this case, plaintiff has not identified what records were allegedly disclosed, what "system of records" these documents were contained in, to whom the records were disclosed, or the adverse effect of this alleged disclosure. Nor does plaintiff offer any facts tending to prove that defendants' disclosures were willful or intentional. Accordingly, plaintiff's claims under the Privacy Act are dismissed.

## D. FTCA Claims

Plaintiff's FTCA claims are barred by the doctrine of sovereign immunity, and in the alternative, by his failure to exhaust his administrative remedies.

### (i) Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Since '[s]overeign immunity is jurisdictional in nature,' the United States may only be sued with its consent." *Dorking Genetics v. United States,* 76 F.3d 1261, 1263 (2d Cir.1996) (quoting *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

 While the FTCA provides a limited waiver of the United States' sovereign immunity, this waiver does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Accordingly, plaintiff's FTCA claims for false arrest, false imprisonment, defamation and malicious prosecution are barred by the doctrine of sovereign immunity. While 28 U.S.C. § 2680(h) provides an exception for claims of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" arising out of "acts or omissions of investigative or law enforcement officers of the United States," this exception is not applicable. "[I]nvestigative or law enforcement officers" are defined in the statute as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Wittich and Higgins have submitted job descriptions describing their responsibilities at Rural Development. (Wittich Decl. Ex. A, Higgins Decl., ¶ 3.) Nothing in these documents indicates that either of them was "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law" and plaintiff has failed to offer any evidence to the contrary.

 Plaintiff's FTCA claims for negligent infliction of emotional distress and intentional and wanton infliction of emotional distress, while not barred by sovereign immunity are legally deficient in that they fail to state a claim.

To survive a motion to dismiss, a cause of action for intentional infliction of emotional distress must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ... That same test has been applied to a cause of action for the negligent infliction of emotional distress.

*Harville v. Lowville Central School District,* 667 N.Y.S.2d 175, 176 (App.Div.1997) (internal citations omitted). In this case, plaintiff's claims are legally deficient because the alleged misconduct of the defendants simply does not rise to the level of being "extreme and outrageous" as a matter of law. *See Morales v. United States,* 961 F.Supp. 633, 638 (S.D.N.Y.1997) (citing *Howell v. New York Post Co.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993)).

### (ii) Discretionary Function Exception

In the alternative, all of plaintiff's FTCA claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which provides that the waiver of sovereign immunity contained in the FTCA does not apply to

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion be abused.

The purpose of the discretionary function exception is "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. S.A. Empresa Viacao Aerea Rio Grandense,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

The discretionary function exception thus "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Id.* 467 U.S. at 808, 104 S.Ct. 2755.

■ The discretionary function exception applies when the challenged acts (1) involve "an element of judgment or choice," *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (internal quotations and citations omitted), and (2) are "based on considerations of public policy." *Id.* 499 U.S. at 323, 111 S.Ct. 1267, 113 L.Ed.2d 335. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* 499 U.S. at 324, 111 S.Ct. 1267. In order to survive a challenge based on the discretionary function exception to the FTCA, a claim must include "facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* 499 U.S. at 324–25, 111 S.Ct. 1267.

■ In this case, plaintiff does not contend, and cannot contend, that the actions of Higgins and Wittich in administering the Rural Development loan program were "not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Indeed, the Housing Act begins with a broad statement of Congress' goal of improving "the general welfare and security of the Nation and the health and living standards of its people" through "housing production and related community development sufficient to remedy the serious housing shortage...." 42 U.S.C. § 1441. Thus, the "public policy" element of the discretionary function exception is clearly satisfied.

The "judgment" element of the discretionary function exception is also satisfied. The Act provides a broad degree of discretion to the Secretary of Agriculture and his agents in carrying out its broad policy goals. For example, 42 U.S.C. § 1485(d) provides that no loan shall be made or insured "unless the Secretary finds that the construction involved will be undertaken in an economical manner and will not be of elaborate or extravagant design or materials." The discretion granted to the Secretary is properly delegated to, and exercised by other USDA officials, such as Higgins and Wittich. *See Williamson v. United States Dep't of Agric.,* 815 F.2d 368, 376 (5th Cir.1987) (noting that discretion granted to Secretary of Agriculture under Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921–2000 is delegated to and exercised by other USDA officials and holding that "the granting and denying of [loans] by FmHA are acts that Congress intended to place behind the shield provided by the discretionary exception to the FTCA"); *Lundstrum,* 954 F.2d at 1146 (acts of FmHA officials in denying loan to farmer protected by discretionary function exception to the FTCA); *Wohlford v. United States,* 823 F.Supp. 386, 390 (W.D.Va.1992) (borrowers' claims against FmHA arising out of farm operating loan barred by discretionary function exception to FTCA).

### (iii) Failure to Exhaust Administrative Remedies

Finally, in the alternative, plaintiff's FTCA claims are procedurally barred by 28 U.S.C. § 2675(a), which prohibits the filing of a claim under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail...." The requirement that a plaintiff file an administrative claim with the appropriate federal agency is jurisdictional and cannot be waived. *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.1983).

■ Plaintiff contends that he pursued his "claim" (the exact nature of which he does not identify) by submitting it to expedited arbitration before the National Appeals Board of the Farmer's Home Administration in August 1990. (Declaration of John Rooney dated December 10, 1997 ("Rooney Decl.") ¶¶ 36–37.) He has also submitted a document indicating that his appeal was suspended on June 17, 1991 due to the then

pending criminal investigation of Dawnwood. (Rooney Decl.Ex. D.) However, he has not submitted any proof that the FmHA rendered a final, written determination on his claims. Moreover, in light of the undisputed fact that the 1990 claim preceded many of the key events at issue in this case, including Rooney's indictment (1991), his conviction (1991), DeBrino's action seeking to foreclose its mechanics' lien (1991), the Government's allegedly wrongful subordination of the Dawnwood mortgages (1991), the Second Circuit's reversal of Rooney's conviction (1994), and Wittich's allegedly defamatory statements (1995), Rooney has clearly not exhausted his administrative remedies. Finally, defendants have submitted a declaration from David J. Spader, Deputy Regional Director for the Northern Region of the Office of General Counsel for the USDA stating that a review of USDA files and inquiries to the national office and to the Rural Housing Service indicates that plaintiff has never filed an administrative claim with respect to the matters alleged in this case. (Riedy Decl.Ex. L.)

### E. Section 1983 Claims

█ 42 U.S.C. § 1983 provides a remedy only for the deprivation of constitutional rights by a governmental official acting under color of law "of *any State* or Territory or the District of Columbia. . . ." (emphasis supplied). In this case, there is no dispute that Wittich and Higgins were employed by the *federal* government and were administering a *federal* loan program in their capacities as *federal* employees. The only allegation of state action is the conclusory allegation in the Amended Complaint that "defendants' unconstitutional actions were carried out together with officials of New York State and/or officials of the Town of Greenport, New York under color of state law." (Am.Compl.¶ 85.) However, the mere allegation that a party "conspired with" a state actor is insufficient to support a cause of action under § 1983. *See San Filippo v. United States Trust Co. of N.Y.*, 737 F.2d 246, 256 (2d Cir.1984); *Tarka v. The Time, Inc.*, No. 90 Civ. 5348, 1991 WL 4706, at *6 (S.D.N.Y. Jan. 14, 1991).

### CONCLUSION

For the reasons stated,

(1) plaintiff's *Bivens* claims are dismissed on grounds of qualified immunity and, in the alternative, for failure to state a claim;

(2) plaintiff's Privacy Act claims are dismissed for failure to state a claim;

(3) plaintiff's FTCA claims are dismissed on grounds of sovereign immunity, and, in the alternative, for failure to exhaust administrative remedies; and

(4) plaintiff's § 1983 claims are dismissed for failure to state a claim. In light of these conclusions, the Court declines to reach defendants' arguments relating to res judicata, improper venue, lack of standing and statute of limitations.

The Clerk of Court is directed to close this action.

SO ORDERED.