**Timothy JOHNSON, Sr. and Luaine Sims, on behalf of their minor son, T.J., Plaintiffs–Appellees,**

v.

**NEWBURGH ENLARGED SCHOOL DISTRICT; Laval Wilson, Superintendent; Phillip Leahy, Former Superintendent; Ralph Pizzo, Former Acting Superintendent; Felix Gonzalez, Principal and Nicholas Bucci, Defendants–Appellants.**

No. 00–7535.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 2000.

Decided Jan. 31, 2001.

Mark C. Rushfield, Shaw & Perelson, LLP., Highland, NY, for Defendants–Appellants.

Michael H. Sussman, Stephen Bergstein, Law Offices of Michael H. Sussman, Goshen, NY, for Appellees.

Before WALKER, Chief Judge, OAKES, and LEVAL, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Plaintiffs, on behalf of their minor son, filed suit pursuant to 42 U.S.C. § 1983 asserting Fourteenth Amendment substantive due process violations based on an

alleged assault on their son by his public school gym teacher.

Defendants bring this interlocutory appeal from an order by the District Court of the Southern District of New York (George A. Yanthis, *Magistrate Judge*)[1] denying qualified immunity for the individual defendants. Defendants also contend that the district court erred when it did not dismiss: (1) a § 1983 claim against the school district for failure to plead facts giving rise to an inference of a policy, custom or practice that led to the alleged Fourteenth Amendment substantive due process violation; (2) a Title VI, 42 U.S.C. § 2000d, claim against the school district for failure to plead facts giving rise to an inference of intentional discrimination causally related to the alleged assault; and (3) a Title VI claim against the individual defendants because they were not contracting parties receiving federal educational funds.

We agree with the district court's conclusion that, on the present record, the individual defendants are not entitled to qualified immunity. The remainder of the defendants' appeal is dismissed for lack of appellate jurisdiction.

## BACKGROUND

Plaintiffs Timothy Johnson, Sr. and Luaine Sims brought this action on behalf of their minor child, T.J.—who at the time of the events in question was an eighth grade African–American student at South Junior High School in Newburgh, New York—whom they allege was assaulted at the school by his gym teacher, Nicholas Bucci. The complaint alleges that this assault violated T.J.'s Fourteenth Amendment substantive due process rights, and constituted racial discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Plaintiffs pled the following facts.

On February 20, 1996, after T.J. and his classmates had finished playing dodge ball, Bucci asked T.J. to hand in the ball. T.J. threw the ball towards Bucci from a distance of about twenty feet. The ball landed near Bucci without hitting him.

In response, Bucci threw two balls back at T.J. and then yelled "you think that's funny, you think that's funny!" as he walked over to T.J. Bucci grabbed T.J. by the throat, shouted "I'll kick the shit out of you!," lifted him off the ground by his neck and dragged him across the gym floor to the bleachers. Bucci then choked T.J. and slammed the back of T.J.'s head against the bleachers four times. Bucci also rammed T.J.'s forehead into a metal fuse box located on the gym wall and punched him in the face. During much of the attack, Bucci prevented T.J. from escaping by placing one of his arms across the boy's chest. Bucci only stopped his assault after another student threatened to intervene.

According to the complaint, this was Bucci's fifth assault on students—four of whom were African–American—in ten years. In 1994, Bucci allegedly hit Jonathan Bryant and twisted his arms causing injury to Bryant's "arm and shoulder that required medical treatment." In 1988, Bucci allegedly slapped Herman Patrick and "a fight ensued," injuring Patrick. In 1987, Bucci allegedly slapped George Blake and, in 1986, he was allegedly involved in a physical altercation with Derrick Walters. Each of these incidents was reported to school officials. Of the five assault victims, only Blake was not African–American.

## DISCUSSION

### I. Qualified Immunity

The central issue before us is whether the district court erred in denying the individual defendants qualified immunity from the substantive due process claims

---

1. The parties consented to transfer of the case to Magistrate Judge Yanthis pursuant to 28 U.S.C. § 636(c)(1).

brought under 42 U.S.C. § 1983. Because the district court addressed this question on a Rule 12(b)(6) motion to dismiss, we review the district court's denial *de novo*, accepting as true the material facts alleged in the complaint and drawing all reasonable inferences in plaintiffs' favor. *See, e.g., Charles W. v. Maul*, 214 F.3d 350, 356–57 (2d Cir.2000); *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir.1998); *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995).

Section 1983 authorizes civil suits for equitable relief and money damages against government officials acting under the color of government authority who subject individuals to "deprivation[s] of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Plaintiffs here seek only money damages, both compensatory and punitive.

The ability to sue for money damages under § 1983 serves both as an incentive for government agents to operate within the confines of their prescribed authority and as a remedy for vindicating federal civil rights. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("When government officials abuse their offices, 'action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))). Where the boundary between authorized official action and the deprivation of an individual's rights is unclear, however, the threat to government actors of personal monetary liability poses risks to effective government operations. As the Supreme Court recognized in *Anderson*, "permitting damages suits against government officials can entail substantial costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson*, 483 U.S. at 638, 107 S.Ct. 3034.

■ To accommodate the conflict between the goals of § 1983 in deterring governmental abuse and remedying unlawful governmental transgressions on the one hand, and the societal interest in not unduly burdening legitimate government operations on the other, the Supreme Court established qualified immunity as an affirmative defense to § 1983 claims. *See Harlow*, 457 U.S. at 814, 102 S.Ct. 2727; *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir.1995). A government actor performing a discretionary task is entitled to immunity from § 1983 suits if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996); *see Warren v. Keane*, 196 F.3d 330, 332 (2d Cir.1999). The availability of qualified immunity in such instances "reduces the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service"—by shielding them from suits "seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable." *Connell*, 153 F.3d at 79 (internal quotation marks omitted).

■ In this action, the defendants assert only the first basis—that no clearly established right was violated—in arguing for qualified immunity.[2] Of course, determining whether a right is "clearly established" is not subject to mathematical precision. "A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear'" in the context of the alleged violation such "'that a reasonable official would understand that what he is doing

**2.** Specifically, Bucci contends that any right he violated was not clearly established and the remaining individual defendants argue that, as a matter of law, they committed no violation.

violates that right.'" *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998) (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). The recurring difficulty with this general directive, however, lies in reasonably articulating the right in relation to the factual situation at hand. *See id.* Characterizing the right too narrowly to the facts of the case might permit government actors to escape personal liability, while doing so too broadly risks permitting unwarranted imposition of monetary liability.

■ Two principles guide our analysis. First, in ascertaining whether the right was clearly established with respect to a given situation, a court must consider "not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the government actor's] position should know" about the appropriateness of his conduct under federal law. *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998); *see Anderson,* 483 U.S. at 646, 107 S.Ct. 3034 ("The general rule of qualified immunity is intended to provide government officials with the ability reasonably [to] anticipate when their conduct may give rise to liability for damages." (internal quotation marks omitted)); *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Second, the absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly established. *See Robinson v. Solano County,* 218 F.3d 1030, 1035 (9th Cir.2000). Indeed, it stands to reason that in many instances "the absence of a reported case with similar facts demonstrates nothing more than widespread compliance with" the well-recognized applications of the right at issue on the part of government actors. *Eberhardt v. O'Malley,* 17 F.3d 1023, 1028 (7th Cir.1994).

### A. Bucci

Bucci contends that even "[a]ssuming arguendo that the ... conduct ... alleged in the Complaint would constitute a violation of the [plaintiffs'] minor son's 14th Amendment due process rights, [he] is nonetheless entitled to qualified immunity because such a right was and is not 'clearly established.'"

The Supreme Court has encouraged lower courts in appropriate circumstances "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all," before reaching the question of whether the right was clearly established at the time. *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). One such circumstance is where, as in the present case, the conduct complained of is of a type that generally occurs without significant warning and ceases in short order, and effectively precludes other forms of judicial review such as suits for declaratory or equitable relief, motions to suppress, or appeals from a conviction. *Compare Conn. v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *County of Sacramento,* 523 U.S. at 841, 118 S.Ct. 1708; *with Mollica v. Volker,* 229 F.3d 366, 371–74 (2d Cir.2000); *and Horne v. Coughlin,* 191 F.3d 244 (2d Cir.1999). In such instances, a § 1983 (or *Bivens*) damage action is likely to provide the only effective vehicle for aggrieved parties to adjudicate their claims, lest the asserted right never be clearly established and the allegedly unconstitutional conduct continue indefinitely. Accordingly, we first address whether the facts plaintiffs allege state a violation of the Constitution.

■ Accepting plaintiffs' factual allegations as true, we conclude that a violation of T.J.'s constitutional "right to be free from the use of excessive force" in the "non-seizure, non-prisoner context" occurred here. *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995). Factors to be considered in excessive force claims "[i]n determining whether the constitutional line has been crossed" include "the need for the application of force, the relationship between the need and the amount of force

that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Metzger v. Osbeck,* 841 F.2d 518, 520 (3d Cir.1988); *see Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (Friendly, J.), *partially abrogated on other grounds by Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980); *Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560, 564 (8th Cir.1988).

■ With respect to the last factor, if the force was "maliciously or sadistically [employed] for the very purpose of causing harm" in the absence of any legitimate government objective and it results in substantial emotional suffering or physical injury, then the conduct is presumptively unconstitutional. This presumption follows from the fact that the substantive due process guarantee of the Fourteenth Amendment protects individuals from "conscience-shocking" exercises of power by government actors. *See, e.g., County of Sacramento,* 523 U.S. at 847, 118 S.Ct. 1708; *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *see also Lowrance v. C.O.S. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994). We recognize that "the measure of what is conscience-shocking is no calibrated yard stick." *County of Sacramento,* 523 U.S. at 847, 118 S.Ct. 1708. However, malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience. Such acts by their very nature offend our fundamental democratic notions of fair play, ordered liberty and human decency. *See, e.g., County of Sacramento,* 523 U.S. at 846, 118 S.Ct. 1708 (citing *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), for the proposition that "the substantive due process guaran-

tee protects against government power arbitrarily and oppressively exercised"); *Breithaupt v. Abram,* 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (conduct shocks the conscience where it is so " 'brutal' and 'offensive' that it d[oes] not comport with traditional ideas of fair play and decency"). Indeed, the Supreme Court intimated as much in *County of Sacramento* when it stated: "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." 523 U.S. at 849, 118 S.Ct. 1708; *see* Carly DeRubeis, Note, *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), 10 *Seton Hall Const. L.J.* 1185, 1198–1202 (2000).

When considered objectively as is required at the qualified immunity stage, Bucci's alleged assault on T.J. is conscience-shocking because it constitutes conduct (1) maliciously and sadistically employed in the absence of a discernible government interest and (2) of a kind likely to produce substantial injury. First, the force Bucci used far surpassed anything that could reasonably be characterized as serving legitimate government ends, such as student discipline, classroom control or self-defense. Second, the alleged assault was extremely violent. Bucci's conduct was of a kind likely to cause substantial physical injury or emotional suffering and a need for medical treatment. It is alleged that T.J. suffered head trauma, lacerations, and bruising, that his injuries required hospital treatment, and that various emotional injuries were inflicted. Accordingly, we easily find the alleged assault to be conscience-shocking in violation of T.J.'s substantive due process right to be free of excessive force. *See, e.g., Miller v. Lovett,* 879 F.2d 1066, 1069 (2d Cir. 1989), *partially abrogated on other grounds by Graham,* 490 U.S. at 386, 109 S.Ct. 1865 (Eighth Amendment, not Fourteenth, applies for excessive force claims brought by prisoners).

Satisfied that a constitutional violation is presented, we turn to the essence of Bucci's appeal: whether the substantive due process right violated was "clearly established" at the time of the assault. Bucci contends it was not for two reasons: (1) no case from this circuit or the Supreme Court has expressly held that a student has a substantive due process "entitlement . . . not to be struck by a teacher," and (2) even assuming that some substantive due process right extends to the educational setting, its "contours" as applied to teacher-student relations were not sufficiently clear at the time of the assault to inform Bucci that the assault was constitutionally prohibited. We are unpersuaded.

Bucci's reliance on the absence of Supreme Court or Second Circuit precedent expressly holding students have a substantive due process right, as he puts it, "not to be struck by a teacher" construes the right too narrowly. In *Rodriguez*, decided one year before Bucci's alleged attack on T.J., we held that individuals possess a Fourteenth Amendment substantive due process right "in the non-seizure, non-prisoner context" to be free from excessive force employed by government actors acting under the color of government authority. *Rodriguez*, 66 F.3d at 477; *see also County of Sacramento*, 523 U.S. at 845–55, 118 S.Ct. 1708. Of course, whether force is excessive depends as much upon the need for force as the amount of force used. *See, e.g., P.B. v. Koch*, 96 F.3d 1298, 1303 (9th Cir.1996) ("Government officials are, of course, justified in using force—even deadly force—in carrying out legitimate governmental functions."). However, this right to be free from excessive force is an across-the-board constraint on all government officials, regardless of the particular position they hold. Simply stated, it defines an irreducible minimum threshold that no government actor—no matter what his or her position and no matter what level of government he or she operates—may constitutionally cross. *Cf. id.* at 1304

("All government officials are on notice that it is unlawful to use excessive force against citizens."). To the extent that no case applying this right in the educational setting has previously arisen in our circuit, we view this unremarkable absence as a strong indication that the right to be free from excessive force is so well-recognized and widely observed by educators in public schools as to have eluded the necessity of judicial pronouncement. *See, e.g., Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 564 (8th Cir.1988); *Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir.1988); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980). *But see generally Jenkins v. Talladega City Bd. of Ed.*, 115 F.3d 821, 826 n. 4 (11th Cir.1997).

Bucci argues further that even if the right at issue, properly conceived, is the broader substantive due process right to be free of excessive force, the "contours" of the right as applied to the educational setting are not sufficiently concrete to overcome qualified immunity. To be sure, the Supreme Court has counseled that for qualified immunity to be inoperative, the right in question cannot be too abstract but rather must be " 'clearly established' in a more particularized, and hence a more relevant sense." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. However, we believe that for claims based on intentionally tortious harmful conduct employed in the absence of any legitimate government interest, the requisite degree of particularity is lessened. Such conduct in the "non-seizure, non-prisoner context" by any government actor under any circumstances is unjustifiable and, therefore, no additional situation-specific "contouring" of the right to be free of excessive force is required. Accordingly, we hold that the right to be free of excessive force as announced by this court in *Rodriguez* was sufficiently concrete to put Bucci on notice that he could not use intentionally harmful force in the absence of a legitimate and discernible government aim.[3]

3. We note further that the complaint fairly alleges that Bucci was acting out of racial

Finally, we caution that the situation in this case is different in kind from other cases that we can envision in which injurious conduct undertaken in the pursuit of a legitimate government interest and involving lesser degrees of culpability, such as gross negligence or recklessness, might be at issue. *Cf. Hegarty v. Somerset County,* 53 F.3d 1367, 1377 (1st Cir.1995). In such instances, context-specific applications of the general right to be free of excessive force are necessary to establish clearly the right's parameters. Indeed, a fair reading of the Supreme Court's decision in *County of Sacramento* supports this culpability continuum for determining the applicability of qualified immunity to excessive force claims:

[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action *most likely to rise to the conscience-shocking level* . . . .

Whether the point of conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, *is a matter for closer calls.* . . .

. . . . .

Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking. . . . That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in

the light of other considerations, fall short of such denial.

*County of Sacramento,* 523 U.S. at 849–50, 118 S.Ct. 1708 (emphases added) (internal citations and quotation marks omitted).

## B. Supervisors

The school's former and current superintendents and the school principal ("the Supervisors") challenge the district court's denial of their qualified immunity defense. The Supervisors argue that the factual allegations in the complaint fail to establish that they were "personally involved" in the deprivation of T.J.'s substantive due process rights and that, as a result, they are entitled to qualified immunity because they did not violate T.J.'s right to be free of excessive force.

■■■ "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (internal quotation marks omitted). Personal involvement of a supervisory official may be established "by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." *Id.; see also Al–Jundi v. Estate of Rockefeller,* 885 F.2d

bias. *See* Complaint ¶¶ 11, 50–53, 71. The question of whether Bucci's assault shocks the conscience in violation of the Fourteenth Amendment due process guarantee aside, a public school teacher may not select students by race to administer beatings. *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 2000d;

*see, e.g., United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (government official may not target person for adverse action based on "an unjustifiable standard such as race, religion, or other arbitrary classification[s]").

1060, 1066 (2d Cir.1989)(direct participation not necessary to establish personal involvement).

 Because this appeal comes to us from a denial of defendants' motion to dismiss on the basis of qualified immunity, our task is to consider whether, as a matter of law, the factual allegations and all reasonable inferences therefrom are insufficient to establish the required showing of personal involvement. *See Gubitosi v. Kapica,* 154 F.3d 30, 32 (2d Cir.1998) ("[A]n appeal is available ... [from] a rejection of the immunity defense where the defendant contends ... on the facts that the plaintiff alleges are true ... the immunity defense is established as a matter of law because those facts show ... that he 'didn't do it.'"); *see also Tellier v. Fields,* 230 F.3d 502, 510 (2d Cir.2000) ("[W]hether the plaintiff has offered sufficient evidence to 'support a finding that particular conduct occurred' is 'not immediately appealable.' However, the defendant's assertion that he or she is entitled to qualified immunity on the basis of stipulated facts, or on the facts as stated by the plaintiff, presents a purely legal question that we have jurisdiction to review." (internal citations omitted)). The complaint alleges that at the time T.J. was assaulted the Supervisors were aware that Bucci had assaulted students on four previous occasions. It further alleges that the Supervisors failed to act on these reports so as to prevent future occurrences, but rather "knowingly expos[ed] students to a teacher with violent propensities."

If these factual allegations are borne out, a jury could find the Supervisors personally involved in the unconstitutional deprivation on the basis that they were either grossly negligent in supervising Bucci or that they exhibited deliberate indifference to the students' rights by failing to act on information that unconstitutional acts were occurring. As a result, we cannot say at this stage of the case that, as a matter of law, the plaintiffs are incapable of establishing the Supervisors' liability for the assault on T.J. Accordingly, we conclude that qualified immunity based on the Supervisors' lack of personal involvement was, at the pleadings stage, appropriately denied by the district court.

## II. Pendent Claims

### A. Section 1983

The school district requests that we exercise pendent appellate jurisdiction over the district court's denial of dismissal as to the § 1983 claim against it. The school district contends that the complaint does not make out a policy, custom or practice on its part that led to Bucci's attack on T.J., a requirement for § 1983 municipal liability. *See Monell v. N.Y.C. Dep't of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir. 1989).

 The school district is not a party to the qualified immunity interlocutory appeal; it is only a pendent party. "[O]n an interlocutory appeal from an order rejecting a claim of qualified immunity, a claim involving a 'pendent party' is an 'unrelated question' that cannot be resolved under pendent jurisdiction." *Kaluczky v. City of White Plains,* 57 F.3d 202, 207 (2d Cir.1995). In *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Supreme Court held, under nearly identical circumstances, that pendent appellate jurisdiction is lacking over a municipality's § 1983 appeal where the only basis for appellate jurisdiction is its employee's appeal of a qualified immunity denial. The Court reasoned that municipal liability and an employee's qualified immunity defense are not "inextricably intertwined" nor is consideration of the municipality's liability "necessary to ensure meaningful review of the" qualified immunity issue. *Id.* Applying *Swint* here, we conclude that pendent appellate jurisdiction over the school district's § 1983 appeal is lacking.

B. Title VI

The individual defendants and the school district both appeal the district court's refusal to dismiss the Title VI claim.

■ Here again, we lack pendent appellate jurisdiction. The Title VI claim and defendants' challenges on appeal involve questions of whether defendant Bucci's assault on T.J. was racially motivated, whether the school district and the Supervisors were aware before the attack of Bucci's history of violence towards African–American students but failed to take precautionary action, and whether Bucci and the Supervisors, as non-contracting parties, can be liable under Title VI. These issues are separate and distinct from the appealable § 1983 qualified immunity questions of whether the right to be free of excessive force was "clearly established" when Bucci attacked T.J., and whether the plaintiffs can establish the Supervisors' personal involvement. Accordingly, the Title VI issues are neither "inextricably intertwined" with, nor "necessary" for resolving the qualified immunity issues. *See, e.g., Davidson v. Chestnut,* 193 F.3d 144, 151 (2d Cir.1999) (per curiam); *Merritt v. Shuttle, Inc.,* 187 F.3d 263, 268–69 (2d Cir.1999); *Gubitosi v. Kapica,* 154 F.3d 30, 33 n. 4 (2d Cir.1998) (per curiam).

## CONCLUSION

The judgment of the district court is affirmed as to the denial of qualified immunity to Bucci and the Supervisors. We lack appellate jurisdiction over the remaining issues and, as to them, we dismiss the appeal. Appellants to bear costs.