Mark LaBOUNTY, Plaintiff–Appellant,

v.

Thomas A. COUGHLIN, III, Commissioner; Carl D. Berry, Superintendent, Woodbourne Correctional Facility; T.J. Miller, Deputy Superintendent of Administration at Woodbourne Correctional Facility, Defendants–Appellees.

Docket No. 97–2015.

United States Court of Appeals, Second Circuit.

Argued Aug. 8, 1997.

Decided Feb. 13, 1998.

Mark LaBounty, Pro Se, Attica, NY.

Vincent Leong, Assistant Attorney General of the State of New York (Dennis C. Vacco, Attorney General of the State of New York, Barbara G. Billet, Solicitor General, Thomas D. Hughes, Assistant Solicitor General, New York City, of counsel), for Defendants–Appellees.

Before: CALABRESI and PARKER, Circuit Judges, and McCURN, District Judge.*

PARKER, Circuit Judge:

## I. BACKGROUND

*Pro se* plaintiff-appellant Mark LaBounty ("LaBounty") filed this 42 U.S.C. § 1983 action in May 1993 alleging that he was subjected to unconstitutional conditions of confinement at Woodbourne Correctional Facility ("Woodbourne") which constituted cruel and unusual punishment under the Eighth Amendment. Specifically, LaBounty alleges that chemicals placed in the drinking water and the presence of friable asbestos particles in the air at Woodbourne caused him to suffer myriad illnesses. He seeks compensatory and punitive damages and declaratory and injunctive relief from defendants-appellees, Thomas Coughlin, III, Commissioner; Carl Berry, Superintendent at Woodbourne, and T.J. Miller, Deputy Superintendent at Woodbourne ("defendants").

LaBounty claims to have personal knowledge that five chemicals were routinely placed into the water supply at Woodbourne. During discovery, he served defendants with a document entitled "second set of interrogatories and for the production of documents." Although LaBounty did not include a specific request for production of documents along with each interrogatory, at the beginning of the document LaBounty noted "with regard to documents identified in the answers to interrogatories, plaintiff request [sic] production of the matter identified in each such answer pursuant to Rule 34 ...". The discovery request included two interrogatories

directed toward the "principal or senior stationary engineers": (1) 17(e): "State whether there is a log book for daily entries of the treatment of water supply at Woodbourne;" and (2) 17(f): "Identify and produce the document(s) that list all chemicals placed in the water supply at Woodbourne Correctional Facility."

Defendants objected to interrogatory 17 as it was directed to a non-party. In response, LaBounty filed a motion to compel the answers and for the production of all requested documents. In March 1994, Magistrate Judge Kathleen A. Roberts ordered the defendants to answer the interrogatory. Defendants then answered interrogatory 17(e) stating "Yes, daily sheet" and 17(f) stating "NB122, NB21, NT150, Chlorine." LaBounty objected to those answers. Magistrate Roberts found them sufficiently answered but directed the defendants to "provide any documents referenced in their answers to plaintiff's interrogatories, to the extent they have not already done so." In December 1994, Magistrate Judge Roberts directed LaBounty to advise the court whether further discovery was sought from defendants. LaBounty stated that defendants had failed to supply him with a number of documents including "the water treatment plaint [sic] log book." The defendants were ordered to respond and in turn stated that no "water treatment logbook" existed but that they had a "Water Works maintenance sheet filled out each day" which would be provided to LaBounty "within the next few weeks."

In February 1995 and upon motion by the defendants, Magistrate Roberts directed LaBounty to answer a number of the defendants' interrogatories which he had previously inadequately answered and warned LaBounty that if he failed to properly respond he would be precluded from offering evidence on the subjects addressed in the interrogatories. LaBounty then answered interrogatory 3,[1] which requested the names of the chemicals or substances added to the water, "unknown at this time." Upon a mo-

---

* Honorable Neal McCurn of the United States District Court for the Northern District of New York, sitting by designation.

1. There were several other interrogatories that he answered but none are relevant to the particular claims asserted here.

tion from defendants to dismiss the action or preclude LaBounty from offering evidence at trial related to the subjects addressed in the interrogatories, Magistrate Judge Andrew J. Peck[2] ordered, pursuant to Fed.R.Civ.P. 37(b)(2), that LaBounty was precluded from offering certain evidence including evidence of chemicals added to the water at Woodbourne. LaBounty filed an objection to Magistrate Peck's Order explaining that he answered "unknown at this time" to interrogatory 3 because the defendants had not produced the daily log books which detailed the chemicals in the water. In June 1995, Magistrate Judge Peck's Order was upheld by Judge Denise L. Cote. In a brief Order, Judge Cote acknowledged that LaBounty claimed that defendants had failed to provide him with the required documents; however, without addressing the discovery issue, Judge Cote upheld Magistrate Judge Peck's preclusion Order.

Defendants then filed a motion for summary judgment in September 1995. The Motion was granted on the drinking water claim but denied on the asbestos claim. *See LaBounty v. Coughlin*, No. 93–CIV–3443, 1996 WL 525865 (S.D.N.Y.1996) (unpublished disposition). Judge Barbara S. Jones[3] held that LaBounty failed to offer any evidence which countered the documents submitted by defendants showing that 1) Woodbourne's water had been deemed safe by private contractors and 2) only three chemicals had been added to the water, all of which met the minimum safety standards set by the New York State Department of Health. *Id.* at *4. Further, the Judge noted that LaBounty had failed to even name the five toxic chemicals which he alleged were added to the water and that he had been precluded from offering any evidence at trial on that issue. *Id.*

On the asbestos claim, the Judge found genuine issues of material fact as to whether LaBounty was exposed to friable asbestos at Woodbourne and as to the notice defendants had of the exposure. Neither party offered documentary evidence to support their affidavits. The Judge found that such exposure to friable asbestos and inaction by the defen-

dants once informed, if proven, could constitute an Eighth Amendment violation and that the claim should proceed to trial. *Id.* at *5–6.

Defendants submitted a Motion to Reargue asserting that the Judge had failed to consider their qualified immunity defense to the asbestos claim. The Judge allowed reargument and then granted summary judgment on the asbestos claim on the grounds of qualified immunity. *LaBounty v. Coughlin*, No 93–CIV–3443, 1996 WL 711497 (S.D.N.Y.1996)(unpublished disposition). The Judge found that during the relevant time period covering LaBounty's complaint "the unlawfulness of exposing plaintiff to crumbling asbestos was not 'clearly established' under federal law." *Id.* at *2.

LaBounty now appeals the district court's grant of summary judgment on both claims.

## II. DISCUSSION

This Court has jurisdiction over LaBounty's appeal pursuant to 28 U.S.C. § 1291. We review the district court's decision to grant summary judgment *de novo* and we view the evidence in the light most favorable to LaBounty, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993). In a *pro se* action we construe the plaintiff's pleadings even more liberally. *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam).

### A. *The Drinking Water Claim*

LaBounty argues that defendants failed to produce documents which recorded the chemicals placed in the water at Woodbourne. As a result, LaBounty was unable to fully respond to the defendants interrogatories which asked the names of the chemicals. He was then precluded from presenting evidence as to the drinking water claim and summary judgment was entered against

---

2. Magistrate Peck was assigned the case in April 1995.

3. Judge Jones was assigned the case in January 1996.

him. After a careful review of the record, we have been unable to determine whether defendants did, in fact, respond properly to LaBounty's request for production of certain documents.

The facts, as detailed in Section I *supra*, show that beginning in September 1993, LaBounty repeatedly requested that the defendants provide him with the "daily log book" recording chemicals placed in the water at Woodbourne.[4] It was not until February 1995, in response to Judge Roberts's demand for an explanation regarding production, that defendants stated they would provide LaBounty with the daily sheets within two weeks. In May and September 1995, LaBounty again filed papers with the court stating that he had not received the information. He again asserts this position on appeal.

Despite voluminous documents between the court and the parties referencing the log book and/or the daily sheets, defendants, strangely enough, assert to this court that

[c]ontrary to plaintiff's contention, he never served a request for production of the daily log-book of the water treatment records. Instead, plaintiff requested production of other water treatment records, which defendants produced to him in their supplementary responses dated February 22, 1994 to plaintiff's second set of interrogatories with request for documents, and in the amended non-party responses dated April 8, 1994 to plaintiff's second set of interrogatories with request for documents.

The letter to Judge Roberts from defendants dated February 3, 1995 and filed February 23, 1995 directly contradicts this contention. In that letter defendants stated that Woodbourne did not have a water treatment plant log book but "Woodbourne has a Water Works maintenance sheet filled out each day." Defendants then stated, "within the next two weeks" Woodbourne will "provide plaintiff with a copy of these sheets for the first day of each month from 1992 to the date of the complaint." This letter was sent a

year *after* the date on which defendants claim they sent the documents. LaBounty claims he never received the sheets which were promised "within two weeks." There is no evidence in the record to the contrary.

It is reasonable to posit that had LaBounty received the sheets, he would have been able to respond fully to defendants' interrogatories requesting the names of chemicals placed in the water. With a complete response, Judge Roberts would not have precluded LaBounty from introducing evidence regarding the chemicals to oppose the defendants' Motion for Summary Judgment. In light of the lack of evidence in the record regarding production of documents, we must vacate the grant of summary judgment so that the district court can determine whether LaBounty has been given copies of the daily sheets. If he has not, he deserves an opportunity to receive the information and to use it to oppose summary judgment. If he has, then the prior dismissal may appropriately be reinstated.

## B. *The Asbestos Claim*

### 1. *The Underlying Claim*

■ At the defendants' behest, we will examine the district court's refusal to grant summary judgment on LaBounty's asbestos claim. LaBounty claims that he was exposed to friable asbestos while incarcerated at Woodbourne and defendants knowingly failed to protect him from such exposure. This indifference to his health, he asserts, violated the Eighth Amendment. In *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court held that a prisoner could state a claim under the Eighth Amendment by showing that the prison's knowingly failed to protect him from exposure to environmental tobacco smoke (constituting deliberate indifference to a serious medical need). *See, Id.* at 35, 113 S.Ct. at 2481–82. So too has LaBounty stated an Eighth Amendment claim.

■ To succeed in showing deliberate indifference, LaBounty must show that the

---

**4.** Documents in the record alternately refer to the "log book" and the "daily sheets." We understand (and the record reveals that the parties understand) these descriptors refer to daily water works sheets kept at Woodbourne which recorded water treatment.

acts of defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). In other words, LaBounty must show that the defendants knew of the health dangers and yet refused to remedy the situation, constituting deliberate indifference. *Wilson v. Seiter,* 501 U.S. 294, 302–04, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991). The burden of establishing that no genuine issue of material fact exists rests with the defendants, the moving party. *Chambers v. TRM Copy Cntrs. Corp.,* 43 F.3d 29, 36 (2d Cir. 1994). The defendants' burden "will be satisfied if [they] can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). If this burden is met, LaBounty must come forward with specific facts showing that there is a genuine issue for trial. *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir. 1994). We must view all of the evidence presented "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *American Cas. Co. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994)(internal quotation marks and citation omitted).

Based on the pleadings, affidavits and other submissions of the parties the relevant facts are as follows: LaBounty claims he was exposed to friable asbestos in his work area and in many common areas of Woodbourne. The asbestos, which lined the pipes in certain areas of the prison, was broken in places (friable) and was constantly airborne. He and other inmates attempted to place a bag and tape over some of the pipes. Defendants acknowledge that the pipes in question are lined with asbestos but argue that the pipes are completely covered and no asbestos is exposed to the air. However, they admit that at times the cover is damaged and some asbestos may be exposed. Such damage, they argue, is quickly repaired. Woodbourne is routinely inspected and has not been cited for any asbestos-related violations. Neither party submitted any documentary evidence to support its position. Defendants failed to produce to the court any reports of inspections of the facilities. Thus, there is a genuine issue of material fact as to whether LaBounty was exposed to friable asbestos.

LaBounty claims that he constantly complained about the presence of asbestos to the Inmate Liaison Committee, the Inmate Grievance officer, and the Administrative Officers at Woodbourne, including each defendant. Defendants claim they have no record of such a complaint on file but make no denial that LaBounty orally complained to the committees he named. Again, material issues of fact exist as to whether the defendants had notice and therefore acted with deliberate indifference. In light of these basic factual disputes between the parties, the district court did not err in declining to grant summary judgment.

### 2. Qualified Immunity

The doctrine of qualified immunity is well established. Government officials are protected from suits against them in their individual capacity for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Where a right is clearly established, "the defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition." *In re State Police Litig.,* 88 F.3d 111, 123 (2d Cir.1996).

The chronic difficulty with this analysis for courts is in accurately defining the right at issue. An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established. On the other hand, as the Supreme Court noted in *Anderson,* if the

right is defined too broadly, "[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039.

■ With these warnings in mind, we find that the district court erred in describing the right at issue as "the right to be free from crumbling asbestos." Such a restricted view of the right conflates the specific conduct at issue with the defined right running afoul of this Court's recognition that "[a] court need not have passed on the identical course of conduct in order for its illegality to be 'clearly established.'" *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir.1996). Instead, we find that the right to be free from deliberate indifference to serious medical needs, established in *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), best encompasses the alleged conduct. In *Estelle*, the Court held that such indifference constituted "cruel and unusual punishment" under the Eighth Amendment. *Id.*

■ LaBounty claims that his continuous health problems caused by exposure to friable asbestos in the air went unattended at Woodbourne as defendants failed to rid the premises of the asbestos or take measures to insulate LaBounty from the asbestos particles. LaBounty's request to be kept in an asbestos-free environment constituted a serious medical need. The Eleventh Circuit endorsed this analysis of a similar claim in *Powell v. Lennon*, 914 F.2d 1459, 1463–64 (11th Cir.1990). There, the court denied qualified immunity to prison officials where

plaintiff alleged friable asbestos particles were in the air of the prison dormitory and yet prison officials refused to move him to a different sleeping area.

■ Although we find that the right was clearly established in 1991–92, the time of the alleged violation here, the question remains whether "[t]he contours of the right" were "sufficiently clear that a reasonable official would understand that what he [did] violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. To grant defendants immunity we must find that "no rational jury could fail to conclude" that it was reasonable for defendants to believe that exposing LaBounty to asbestos would not violate his rights. Given the known dangers of friable asbestos in 1991–92 [5], we hold that a reasonable person would have understood that exposing an inmate to friable asbestos could violate the Eighth Amendment.

## III.  CONCLUSION

We VACATE AND REMAND the district court's dismissal of LaBounty's claim regarding the prison drinking water so that the court can ensure that LaBounty receives, if he has not already received, the documents which recorded the chemicals added to the water at Woodbourne. We also VACATE the district court's grant of summary judgment to defendants based on qualified immunity grounds and REMAND for further proceedings consistent with this opinion.

5. Several courts which have granted qualified immunity in prisoner asbestos cases note that the weight of case law indicates that mere exposure to moderate levels of asbestos is not actionable because asbestos remains in many public buildings throughout the country. As a result, a reasonable defendant would not know that the presence of asbestos could violate the Eighth Amendment. *See, e.g., McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir.1993). However, LaBounty's claim, like that of the plaintiff in *Powell*, concerns asbestos particles actually in the air, rather than simply the presence of enclosed asbestos in pipes or other building materials. The Seventh Circuit in *McNeil* recognized that friable asbestos posed a separate issue. *Id.* at 125.

Friable asbestos was recognized by Congress to be a dangerous toxic chemical in the early 1970s and was listed as a "hazardous air pollutant" in the regulations to the Clean Air Act. 36 Fed.Reg. 5931 (1971). This Court acknowledged in 1988 that friable asbestos poses a significant health risk because airborne particles can become lodged in lungs and in the respiratory tract and over time can lead to asbestosis, mesothelioma and lung cancer. *See Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 50 (2d Cir.1988).