Vince WARREN, Tyrone Benton, John Murray, Plaintiffs–Appellees,

v.

John P. KEANE, Superintendent; C. Greiner, Deputy; B. Kehn, Deputy; T. Morris, Fire & Safety; and Thomas A. Coughlin, Commissioner, New York State Corrections, J. Burt, Officer, Defendants–Appellants.

Docket No. 98–2997

United States Court of Appeals, Second Circuit.

Argued: July 13, 1999

Decided: Nov. 16, 1999

Michael B. Lumer, Kaiser Saurborn & Mair, P.C. (David N. Mair, of counsel), New York, N.Y., for Plaintiffs–Appellees.

Thomas Sofield, Assistant Attorney General (Eliot Spitzer, Attorney General of the State of New York, Thomas D. Hughes, Assistant Solicitor General, of counsel), New York, N.Y., for Defendants–Appellants.

Before: WINTER, Chief Judge, WALKER and CABRANES, Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge:

Plaintiffs-appellees Vince Warren, Tyrone Benton, and John Murray, all New York state prison inmates, brought this action pursuant to 42 U.S.C. § 1983, alleging that they were subjected to cruel and unusual punishment through exposure to environmental tobacco smoke ("ETS"), commonly known as second-hand smoke. Defendants-appellants, who are officials of the New York State Department of Correctional Services ("DOCS"), appeal from an order of the United States District Court for the Southern District of New York (John E. Sprizzo, *Judge*), denying their motion for summary judgment and holding that they were not entitled to qualified immunity from plaintiffs' suit. We affirm the decision of the district court and remand for further proceedings.

## BACKGROUND

Plaintiffs have been confined at one time or another in Cell Block A of the Sing Sing prison in Ossining, New York. In March of 1990, defendants adopted a smoking policy for prisons in response to the New York State Clean Indoor Air Act, N.Y. Pub. Health L. § 1399–n *et seq.*, which prohibits smoking in certain public areas but does not regulate smoking in private residences. Sing Sing Policy and Procedure 104 treats inmates' cells as private residences, allowing inmates to smoke freely in their cells. Smoking is also allowed in a recreation area near Cell Block A. Smoking is prohib-

ited, however, in Sing Sing's gym, classroom, mess hall, library and chapel.

On August 25, 1993, plaintiffs filed this action in the district court. Their amended *pro se* complaint[1] alleges that the level of ETS in the cells and common areas at Sing Sing, combined with poor ventilation, creates serious long-term health risks, and that by exposing plaintiffs to these conditions, defendants violated their Eighth Amendment rights. Plaintiffs assert that defendants have failed both to promulgate sufficient smoking regulations and to enforce the prohibitions that are in place. They claim to suffer from sinus problems, headaches, dizziness, asthma, hepatitis, nausea, shortness of breath, chest pains, and tuberculosis as a result of exposure to ETS.

Defendants moved for summary judgment on two grounds: (1) exposure to ETS could not amount to an Eighth Amendment violation and, (2) in any event, they were entitled to qualified immunity. The district court denied defendants' motion for summary judgment in a Memorandum Opinion and Order dated September 10, 1996. Judge Sprizzo determined that disputed issues of material fact precluded summary judgment on either of the grounds asserted by defendants. Discovery proceeded apace, until defendants renewed their motion for summary judgment on the basis of qualified immunity. They contended that intervening caselaw and facts developed through discovery bolstered their argument. On October 20, 1998, the district court, after hearing oral argument, adhered to its earlier decision and denied the motion from the bench. Defendants took this appeal.

## DISCUSSION

█ We review the district court's decision whether to grant summary judgment on the basis of qualified immunity *de novo*. *See LaBounty v. Coughlin,* 137 F.3d 68, 71 (2d Cir.1998). The doctrine of qualified immunity protects government officials from suits for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine "serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). Defendants are entitled to qualified immunity if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate such law. *See Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996).

The "chronic difficulty" in applying the test for qualified immunity is defining the right at issue in a manner that is neither too broad (thereby exposing officials to numerous suits based on violations of abstract rights) nor too narrow (thereby insulating nearly all discretionary decisions from liability). *See LaBounty,* 137 F.3d at 73–74. Moreover, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

█ On June 18, 1993, two months before plaintiffs filed their complaint, the Supreme Court decided *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In *Helling,* the Court held that the Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to future health problems that an inmate may suffer as a result of current prison conditions, even if the inmate "shows no serious current symptoms." *Id.* at 33, 113 S.Ct. 2475. The Court explained that a plaintiff "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of ETS

1. Counsel commenced their representation of plaintiffs on January 22, 1996.

that pose an unreasonable risk of serious damage to his future health." *Id.* at 35, 113 S.Ct. 2475.

The Supreme Court identified both objective and subjective elements. Objectively, a plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS." *Id.* The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also "whether society considers the risk ... to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* at 36, 113 S.Ct. 2475. Subjectively, the plaintiff must prove deliberate indifference, considering the officials' "current attitudes and conduct" and any policies that have been enacted. *Id.*

■ We hold that after *Helling*, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health. *See Rochon v. City of Angola*, 122 F.3d 319, 320 (5th Cir.1997) (denying qualified immunity on ETS claim in light of *Helling*). We reject defendants' argument that the right must be so narrowly defined as to mirror the facts in *Helling*, where an inmate was double-celled with another inmate who smoked five packs of cigarettes daily; a court need not have passed on the identical conduct in order for its illegality to be "clearly established." *See LaBounty*, 137 F.3d at 74.

Moreover, even before *Helling* was decided, plaintiffs possessed clearly established rights with respect to their health conditions. In *LaBounty*, a case involving the alleged exposure of prison inmates to asbestos, we held that the right at stake was not the narrow right to be free from exposure to asbestos, but a broader "right to be free from deliberate indifference to serious medical needs." *LaBounty*, 137 F.3d at 74. We noted that this right had been clearly established as far back as 1976 by *Estelle v. Gamble*, 429 U.S. 97,

104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See id.* We determined that "[g]iven the known dangers of friable asbestos in 1991–92," a reasonable person would have known that exposure to asbestos could violate the Eighth Amendment. *LaBounty*, 137 F.3d at 74. Similarly, the medical dangers of ETS were well known to defendants; Sing Sing Policy and Procedure 104 itself states that "the health risks associated with smoking are well-documented." Given the known dangers of ETS, we conclude that a reasonable person would have understood that exposing an inmate to high levels of ETS could violate the Eighth Amendment.

■ Defendants also argue that even if plaintiffs' rights were clearly established, it was reasonable for them to believe that they were not violating these rights. We disagree. The facts remain in dispute, but as the district court observed in its first denial of defendants' summary judgment motion, "[p]laintiffs' allegations, if believed, overwhelmingly describe a prison environment permeated with smoke resulting from, *inter alia*, under-enforcement of inadequate smoking rules, overcrowding of inmates and poor ventilation." *Warren v. Keane*, 937 F.Supp. 301, 305 (S.D.N.Y. 1996). Until the facts are determined, we are unable to say that any prison official reasonably could have believed that the alleged severe exposure to ETS did not violate the plaintiffs' Eighth Amendment rights.

We intimate no view as to whether plaintiffs will ultimately be able to support both the objective and subjective elements of their claim under *Helling*. However, at this stage of the litigation defendants are not entitled to qualified immunity from these claims, and plaintiffs may proceed with their action.

## CONCLUSION

The order of the district court is affirmed, and the case is remanded to the

district court for further proceedings. Costs will be taxed to the appellants.