14-2245
Rodriguez v. Manenti

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of July, two thousand fifteen.

Present:     ROSEMARY S. POOLER,
             RAYMOND J. LOHIER, JR.,
             SUSAN L. CARNEY,
                  *Circuit Judges.*
_____

Jaime Rodriguez,

         *Plaintiff-Appellee*,

         v.                                                    14-2245

John Manenti, D.O., BOP Northeast Regional Medical Director,

         *Defendant-Appellant*,

Federal Bureau of Prisons, Jane/John Does, members of the Northeast Region Utilization Committee, Federal Bureau of Prisons, in their individual and official capacities, J.L. Norwood, Northeast Regional Director, Federal Bureau of Prisons, individually and officially, Harrell Watts, National Inmate Appeals Administrator, Federal Bureau of Prisons, in his individual and official capacities, Hyosim Seon-Spada, BOP Nurse Practioner,

         *Defendants*.

FOR DEFENDANT-APPELLANT:                    Robert D. Kamenshine (Barbara L. Herwig, *on the brief*), *for* Joyce R. Branda, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C.


FOR PLAINTIFF-APPELLEE:                     Jaime Rodriguez, pro se, Fort Dix, N.J.


Appeal from an order of the United States District Court for the Northern District of New York (Kahn, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court be and it hereby is **AFFIRMED**.

Defendant-Appellant John Manenti appeals from the April 24, 2014 order of the United States District Court for the Northern District of New York (Kahn, *J.*), denying his motion for summary judgment on the basis of qualified immunity. Plaintiff-Appellee Jaime Rodriguez filed a complaint against Defendant, under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendant denied him surgery necessary to alleviate chronic pain and a serious limitation of mobility caused by a knee injury he had previously sustained as a result of a gunshot wound. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Although this Court generally lacks jurisdiction to consider a denial of summary judgment, we may review a district court's order denying a motion for summary judgment on qualified immunity grounds "to the extent the denial turns on an issue of law." *Terebesi v. Torreso*, 764 F.3d 217, 229 (2d Cir. 2014) (internal quotation marks omitted). "Where factual disputes persist, we may exercise appellate jurisdiction only for the limited purpose of deciding whether, on the basis of stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law." *Id.* (internal quotation marks omitted). "The burden of establishing that no genuine issue of material fact exists rests with the defendant[ ], the moving party." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). "Within these constraints, our review is *de novo*." *Terebesi*, 764 F.3d at 229 (internal quotation marks omitted).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal quotation marks omitted). Neither party disputes that, at the time of the alleged violation, it was clearly established that to succeed on a claim for the unconstitutional denial of medical care, "it is enough for the prisoner to show deliberate indifference to serious medical needs." *Hathaway v.*

2

*Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). "[T]he question remains whether the contours of the right were sufficiently clear that a reasonable official would understand that what he did violates that right." *LaBounty*, 137 F.3d at 74 (internal quotation marks and alterations omitted). Accordingly, we address only whether "the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendant[ ] to believe that [he was] acting in a fashion that did not violate a clearly established right." *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996).

A serious medical need exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted). Although "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," this Court has referred to a non-exhaustive list of factors, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (internal quotation marks omitted).

Defendant argues that a reasonable official would not have realized that Plaintiff's knee injury constituted a serious medical need because district courts in this Circuit have found that the denial or delay of treatment for allegedly similar knee injuries did not violate (or clearly violate) an inmate's Eighth Amendment rights. This argument runs "afoul of this Court's recognition that 'a court need not have passed on the identical course of conduct in order for its illegality to be clearly established.'" *LaBounty*, 137 F.3d at 74 (alteration omitted) (quoting *Greifinger*, 97 F.3d at 703)). In particular, this Court does not analyze Eighth Amendment claims for the deprivation of medical care according to body parts. *See, e.g.*, *Chance*, 143 F.3d at 702 ("Of course, not all claims regarding improper dental care will be constitutionally cognizable. Dental conditions, like other medical conditions, may be of varying severity.").

Under Plaintiff's version of the facts, Defendant was aware that Plaintiff's knee injury caused him chronic pain and that intermittent knee locking led to a periodic inability to walk. Plaintiff also produced evidence that Defendant denied or delayed surgery approval for over a year after learning that Plaintiff's treating physician, at least, recommended surgery to alleviate Plaintiff's symptoms. At the time of the alleged violation, it was clearly established that "that the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." *Brock*, 315 F.3d at 163 (internal quotation marks omitted) (rejecting the proposition that "only 'extreme pain' or a degenerative condition would suffice to meet the legal standard" for a "serious medical condition"). Taking the record in the light most favorable to Plaintiff, we therefore conclude that a reasonable juror might find that a reasonable official would have realized that denying Plaintiff's surgery request would "cause or perpetuate [his] pain" for an intolerably long period. *Id.* (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)); *see also Hathaway*, 841 F.2d at 50–51 (holding inmate who alleged "delay of over two years in arranging surgery to correct the

3

broken pins in his hip" raised factual dispute sufficient to survive summary judgment as to whether defendant was deliberately indifferent to his serious medical needs); *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006) (presuming that five-month delay of liver biopsy was "objectively serious" where plaintiff put forth evidence that he suffered pain during that period).

An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "However, while 'mere medical malpractice' is not tantamount to deliberate indifference," *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996), "a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," *Chance*, 143 F.3d at 703 (internal quotation marks omitted); *see also Brock*, 315 F.3d at 167 (holding that the "conscious choice . . . to prescribe easier and less efficacious treatment plans for prisoners" that "will likely cause pain and other medical problems . . . violates the Eighth Amendment" (internal quotation marks and alterations omitted)). We have also held "that a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005); *see also Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors."). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703.

The district court properly ruled that a rational factfinder could find that Defendant did subjectively know of, and disregard, an excessive risk to Plaintiff's health by denying his surgery request. Plaintiff presented evidence that Defendant knowingly acted contrary to the recommendation of the orthopedic surgeon to whom the Bureau of Prison had referred Plaintiff, instead "reflexively relying" on what Plaintiff alleges was a misinterpretation of the prison's own InterQual Guidelines. *Johnson*, 412 F.3d at 406. Accepting Plaintiff's reading of the InterQual Guidelines, as we must at this juncture, Defendant has failed to offer anything but his ipse dixit to show that his denial of Plaintiff's surgery request was the result of independent medical judgment. This Court's prior decision in *Johnson* informed Defendant that he could be held liable for deliberate indifference to Plaintiff's serious medical need where: (1) Plaintiff's treating physician advised him that surgery "was the medically appropriate course of treatment";
(2) there was "conflicting evidence" concerning whether denying Plaintiff surgery "was, in fact, medically justifiable"; and (3) Defendant did not take steps to verify that "it would be medically appropriate to ignore" the advice of Plaintiff's treating physician. *Id.* at 404.

Defendant argues that his denial of surgery constituted a mere disagreement among medical professionals because (1) it was reasonable to require Plaintiff to exhaust more conservative treatment options; (2) the prison's InterQual Guidelines called for six weeks of physical therapy before surgery might be considered; and (3) Defendant did not reflexively rely on the InterQual Guidelines in denying Plaintiff's surgery request. A jury evaluating the record evidence could determine that Defendant's recommendation of physical therapy was reasonable

or, at most, negligent. However, on appeal from the denial of qualified immunity, the evidence must be viewed in the light most favorable to Plaintiff. Examined this way, a jury could agree with Plaintiff that the InterQual Guidelines actually supported surgery given Plaintiff's particular condition—an unstable meniscus tear producing locking of the knee, along with an MRI revealing the presence of a foreign object. A reasonable juror could further conclude that medical professionals would find it obvious that the InterQual Guidelines on which Defendant purports to have relied were inapplicable to Plaintiff's condition and physical therapy therefore would not provide medically appropriate treatment. Under such circumstances, a jury might draw significance from Defendant's initial failure to provide any explanation for rejecting Plaintiff's request for surgery and determine that this denial did not amount to a mere difference of medical opinion.

We have considered the remainder of Defendant's arguments and find them to be without merit. Finding that the record discloses unresolved issues of fact, the order of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk